**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Hayk Arakelyan,

Petitioner

v.

Todd Blanche, et al.,

Respondents

Case No.: 2:26-cv-01825-JAD-MDC

**Order Granting Habeas Petition and Denying as Moot Motion to Supplement**

[ECF Nos. 10, 15]

Hayk Arakelyan, a citizen of the former USSR, came to the United States in 1991 and was ordered removed to Armenia in 2011. He was detained for approximately 10 months after the entry of his final removal order but, because immigration officials could not effectuate his removal, he was released on an order of supervision. Immigration and Customs Enforcement (ICE) officials arrested him again on May 28, 2026, after he was sentenced for a supervised-release violation. Arakelyan now seeks release from ICE custody, contending that his detention violates the principles articulated in *Zadvydas v. Davis*.[1] The government responds that Arakelyan should remain detained because of his criminal history. But the government provides no legal support for its position that Arakelyan's "criminal activity is the demonstrative factor in this case," and it concedes that his removal is not reasonably foreseeable, so I grant Arakelyan's petition and order his release.

## Background

Hayk Arakelyan came to the United States from the former USSR in 1991.[2] He was convicted of several state crimes in 2007 and 2011, and he was served with a notice to appear for

[1] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

[2] ECF No. 12-1 at 4 (Arakelyan's I-213 form, reflecting that he received lawful-permanent-resident status on November 29, 1991).

immigration-removal proceedings on June 1, 2011.[3] Arakelyan was ordered removed to Armenia on June 20, 2011.[4] He appealed that determination several times, and his removal order became final on November 25, 2015, when the Ninth Circuit denied his second petition for review.[5]

Arakelyan represents that he was held in immigration custody for approximately ten months after his removal order became final.[6] He was released on an order of supervision because immigration officials could not effectuate his release to Armenia.[7] On May 28, 2026, Arakelyan was rearrested by ICE officials after being served with notice that he had violated the terms of his supervision order.[8] He has been in immigration custody ever since.

## Discussion

### A. This court has jurisdiction to order relief related to Arakelyan's habeas petition.

The constitution provides that the writ of habeas corpus is "available to every individual detained in the United States."[9] That writ permits a person who is in custody to challenge the legality of his detention, and the court has the authority to release the petitioner if it determines that the petitioner is illegally detained. The court's habeas jurisdiction encompasses a noncitizen's challenge to his detention under the United States's immigration laws.[10]

---

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] ECF No. 10 at 5.

[7] *Id.*

[8] *Id.* at 6; ECF No. 12-3 (notice of revocation of release, informing Arakelyan that his release was revoked because he violated a release condition).

[9] *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. 1, § 9, cl. 2).

[10] *Zadvydas*, 533 U.S. at 687.

**B. This nation's immigration laws permit a noncitizen's detention pending removal, but that detention period should not exceed six months without a significant likelihood of removal in the reasonably foreseeable future.**

***1. The government has authority to detain noncitizens after they have been ordered removed.***

The Immigration and Nationality Act (INA) and its implementing regulations establish a complex set of rules governing the government's authority to arrest, detain, order removed, and deport noncitizens. 8 U.S.C. § 1231(a) governs the detention of noncitizens who have been ordered removed. It establishes a 90-day "removal period" that begins on "(i) the date the order of removal becomes administratively final, (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order," or (iii) the date the noncitizen is released from non-immigration detention.[11] During that 90-day period, detention is mandatory.[12] The statute gives the government the ability to detain a noncitizen beyond that removal period under § 1231(a)(6) if he is inadmissible, removable "as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy,"[13] or has been determined "to be a risk to the community or unlikely to comply with the order of removal."[14] If those conditions aren't met, the government may release the noncitizen "subject to certain terms of supervision."[15]

---

[11] 8 U.S.C. § 1231(a)(1)(B).

[12] 8 U.S.C. § 1231(a)(2)(A).

[13] *Zadvydas*, 533 U.S. at 682.

[14] 8 U.S.C. § 1231(a)(6).

[15] *Zadvydas*, 533 U.S. at 682 (quoting 8 U.S.C. § 1231(a)(6)) (cleaned up).

***2. The Supreme Court has limited the government's statutory authority to indefinitely detain noncitizens awaiting removal.***

Section 1231(a)(6) contains no limit on the length of time that a noncitizen may be held after his removal order becomes final. But in *Zadvydas v. Davis*, the United States Supreme Court rejected the government's contention that noncitizens can be held indefinitely under § 1231(a)(6) because that interpretation "would raise a serious constitutional problem" under the Fifth Amendment's due-process clause.[16] To avoid its constitutional concerns, the High Court interpreted the statute to permit continued detention only if a noncitizen's removal is "reasonably foreseeable."[17] It determined that six months of post-removal-period detention is presumptively reasonable.[18] But after six months, the noncitizen must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future" to show that his prolonged detention exceeds the government's statutory authority and that he should be released from ICE custody.[19] If the noncitizen meets that burden, "the government must respond with evidence sufficient to rebut that showing."[20] And as "the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[21]

---

[16] *Id.* at 690.

[17] *Id.* at 699.

[18] *Id.* at 701.

[19] *Id.*

[20] *Id.*

[21] *Id.* (cleaned up).

### *3. Arakelyan's removal is not reasonably foreseeable.*

Arakelyan has been detained under his final removal order for approximately 14 months. He was detained for approximately ten months in 2015, and has been detained for more than four months since his May 2026 arrest.[22] So Arakelyan bears the initial burden of showing that there are "good reason[s] to believe that there is no significant likelihood of removal in the reasonably foreseeable future."[23]

To meet that burden, Arakelyan argues that he has been subject to an order of supervision for approximately ten years and ICE has been unable to effectuate his removal during that time. He argues that his country of citizenship (USSR) no longer exists and he has no status in Armenia, the country named in his order of removal.[24] Arakelyan believes that "the Armenian consulate has refused to issue [him] travel documents because, although the area he was born in is present day Armenia, [he] was not born in and has never lived in Armenia."[25] I find that

---

[22] Several courts have found that prior detention periods must be counted; otherwise, the government could detain, release, and re-detain noncitizens ad nauseam without technically violating *Zadvydas*. *See, e.g.*, *Shalala v. Mattos*, 2025 WL 3568234, at * 6 (D. Nev. Dec. 14, 2025) (considering the "full amount of time that Petitioner has spent in immigration detention since he was ordered removed" because "[o]therwise, the government could simply circumvent the INA by releasing and re-detaining citizens such that they never reach six months of continuous detention"); *Nguyen v. Scott*, 796 F. Supp. 703, 722 (W.D. Wash. 2025) (noting that, "under the reasoning of *Zadvydas*, a series of releases and re-detentions by the government . . . in essence results in an indefinite period of detention, albeit executed in successive six-month intervals"). I agree with the reasoning of those courts. *Zadvydas* presumed that detention following removal could reasonably last six months. If, as here, the noncitizen has been previously detained under the same removal order, the government cannot simply restart the six-month clock whenever it chooses to re-detain him. So I consider prior detention periods in my analysis. And because the government doesn't raise any arguments for a longer period of detention under the revocation of his supervised release, I don't address whether applicable regulations addressing detention following revocation permit detention in excess of what *Zadvydas* allows.

[23] *Zadvydas*, 533 U.S. at 701.

[24] ECF No. 10 at 6.

[25] *Id.*

Arakelyan's allegations are sufficient to establish good reason to believe that he is not likely to be removed in the reasonably foreseeable future. And the government admits that the likelihood of "removal to Armenia [or] Russia is concededly uncertain at this point,"[26] so I find that it has not met its shifted burden to provide evidence showing that Arakelyan is likely to be removed anytime soon.

The government insists that Arakelyan's petition nevertheless "should be denied based on his criminal activity," claiming that he committed an aggravated felony and thus must be mandatorily detained under 8 U.S.C. § 1227(a)(2)(A)(iii), which "specifically prohibits release for '[a]ny [noncitizen] who is convicted of an aggravated felony at any time after admission.'"[27] But that provision states only that "[a]ny [noncitizen] who is convicted of an aggravated felony at any time after admission is deportable."[28] Contrary to the government's assertion, § 1227(a)(2(A)(iii) does not "specifically prohibit[] release,"[29] and the government provides no other legal analysis to support its proposition that the petitioner's criminal history is dispositive here. Indeed, each of the petitioners in *Zadvydas* had a long criminal history, and one was ordered removed under § 1227(a)(2)(A)(iii); but the Supreme Court did not consider those histories or that statute in its § 1231 analysis.[30] I decline to do so as well. So I grant Arakelyan's petition on this basis and order his release. And because I grant relief on this ground, I need not and do not reach Arakelyan's alternative grounds for relief.

---

[26] ECF No. 12 at 3.

[27] *Id.* at 2.

[28] 8 U.S.C. § 1227(a)(2)(A)(iii).

[29] ECF No. 12 at 2.

[30] *See Zadvydas*, 533 U.S. at 685–86, 689–96.

## Conclusion

IT IS THEREFORE ORDERED that that petitioner Hayk Arakelyan's petition for a writ of habeas corpus under 28 U.S.C. § 2241 **[ECF No. 10] is GRANTED**. Petitioner **Hayk Arakelyan must be released from detention within three days, subject to reasonable supervision conditions.**

IT IS FURTHER ORDERED that respondents must file and serve on defense counsel:

(1) notice of the date, time, and location of Arakelyan's release at least 24 hours before the release is set to occur, and

(2) within four days of this order, notice that Arakelyan's release was effectuated.

IT IS FURTHER ORDERED that counsel for respondents is directed to immediately provide notice of this order to the restrained parties they represent.

IT IS FURTHER ORDERED that Arakelyan's motion to supplement his petition **[ECF No. 15] is DENIED as moot.**

**The Clerk of Court is directed to CLOSE THIS CASE.**

U.S. District Judge Jennifer A. Dorsey
October 6, 2026